HAROLD S. CHISHOLM, APPELLANT, v.
L. V. REDFIELD, RESPONDENT.

No. 4196

December 2, 1959                    347 P.2d 523

*Ernest S. Brown,* of Reno, for Appellant.

*Woodburn, Forman, Wedge, Blakey and Thompson,* of Reno, for Respondent.

## OPINION

By the Court, BADT, J.:

Appellant has appealed from a judgment awarding respondent an injunction against appellant, and from an order denying appellant's motion to dissolve an earlier preliminary injunction. The parties will be referred to by name.

Redfield's complaint, filed June 3, 1957, alleged Chisholm's indebtedness to him in a sum in excess of $250,000 theretofore advanced by him to Chisholm for the financing and operation of two lumber yards in Washoe County. He alleged that on January 1, 1957 the two agreed that Redfield was to operate and manage the lumber yards until sufficient moneys were realized by way of profits or from a sale of the business to reimburse him; that on June 3, in violation of the agreement, Chisholm padlocked the gates and closed the lumber yards, rendering their operation by Redfield impossible, with resulting irreparable damage to Redfield unless Chisholm was restrained from interference with Redfield's operations. No other relief was sought. Chisholm's answer admitted padlocking the lumber yards on June 3, 1957, but denied all other material allegations of the complaint.

The case was tried by the court without a jury and the court made findings to the effect that in August 1955 Chisholm sought financial assistance from Redfield for the operation of the former's lumber business, at which time Redfield agreed to lend Chisholm from time to time amounts equal to one-half of Chisholm's inventory and two-thirds of his accounts receivable; that by January 1, 1957 Redfield had advanced to Chisholm in excess of $250,000, which was then due and owing; that on January 1, 1957 the parties agreed that Redfield should assume the entire management and control of said lumber business until such time as sufficient money was received, either by way of profits or the sale of said business, to reimburse Redfield for all money advanced by him to Chisholm; that on June 3, 1957 Chisholm closed and padlocked the yards, making it impossible

for Redfield to operate them; that unless restrained, Chisholm would prevent Redfield's operation, whereby Redfield would suffer great and irreparable injury; and that Redfield had no plain, speedy, or adequate remedy at law.

Chisholm asserts several grounds for reversal: (1) that the evidence does not support the findings, (a) as to the asserted agreement, or (b) as to the advancement of any money to Chisholm *individually;*[1] (2) that the evidence shows that the advances by Redfield were not made to Chisholm but partly to H. S. Chisholm, Inc., and partly to Riverside Lumber Company, a corporation, or to Oregon-Nevada Lumber Company, a corporation; that the advances were not loans but contributions to the capital stock of Oregon-Nevada Lumber Company, to which Chisholm had likewise contributed capital by way of the lumber yards owned or leased by him and sundry improvements, trucks and other equipment aggregating some $92,000 in value; (3) that even if such agreement had been made as alleged and found by the court, it was so indefinite, ambiguous, and uncertain as not to support an injunction; (4) that Redfield, in suing Chisholm as an individual, had in effect established a receivership of Oregon-Nevada Lumber Company, with himself as the receiver, without the sanction of any of our statutory requirements essential to a corporate receivership; (5) that the agreement is void under the statute of frauds because (a) it was equivalent to a lease of lands for more than one year, and (b) because it was not to be performed within one year; and (6) that the agreement is void for want of consideration and lack of mutuality.

(1) Redfield testified definitely and positively to the agreement placing the operation and control of the lumber yards in his hands, detailing the circumstances and conversations leading up to it. This was met by positive denials by Chisholm. The testimony was in diametrical opposition. The trial court chose to accept the testimony

---

[1]This is considered under (2) infra.

of Redfield and to reject that of Chisholm. We must accordingly hold that there was support for the finding that the agreement was made. State ex rel. Department of Highways v. Shaddock, 75 Nev. 392, 344 P.2d 191; Swartout v. Grover Collins Drilling, etc., 75 Nev. 297, 339 P.2d 768.

(2) The same situation applies to appellant's contention that all of Redfield's advances were made to one or another of the three corporations mentioned and none to Chisholm as an individual. Fifty pages of cross-examination met with Redfield's constant insistence that he dealt with Chisholm as an individual. When confronted with his numerous checks, all payable to Oregon-Nevada Lumber Company, the fact that they were deposited to the credit of that company in the bank, and that payments for merchandise, expenses, etc. were all by way of checks drawn in the name of Oregon-Nevada Lumber Company, signed by him and Chisholm, and later by him alone, he insisted that this was merely a matter of mechanics; that Chisholm was simply operating under a new name and that he, Redfield, was continuing to finance him under the original agreement. Many circumstances and particular transactions were inquired into, and many activities in the relationship appeared to be casual, informal, and slipshod in the extreme. Chisholm had pleaded that the parties were engaged in a joint adventure, and there was evidence of something in the nature of a joint adventure whereunder both Redfield (by way of cash) and Chisholm (by way of his lumber yards, stock, and equipment) contributed to the capital of a corporation to be formed and which actually was formed. But apparently it was a "dry corporation" which functioned only by the use of its name, without bylaws, without meetings of directors, without issuance of its corporate stock, and without (although there was some evidence contra) conveyance to it of any property. The court found that there was no joint adventure. We cannot say that the finding that the advances were made by Redfield to Chisholm individually in the amounts claimed was without substantial support.

(3) We must also reject the contention that the contract was so indefinite, ambiguous, and uncertain that its breach could not be enjoined. The parties operated under the original agreement for advances secured by one-half of inventories and two-thirds of accounts receivable for the last six months of 1955 and all of 1956, till Redfield called a halt on account of what he considered Chisholm's excessive purchases and poor business judgment, and insisted that he be placed in full control. Upon Chisholm's acquiescence they operated under the new agreement for six months more, with Redfield being reimbursed from time to time, mainly out of receipts on account of bills receivable. Under these circumstances we cannot say that the agreement for exclusive control in Redfield until he should be reimbursed was so indefinite, ambiguous, or uncertain as to exclude the right of injunctive relief against its breach. See MacDonald v. Rosenfeld, 83 Cal.App.2d 221, 188 P. 2d 519.

(4) For similar reasons we are not impressed with the argument that the injunction against violation of the contract unlawfully effected a receivership over the corporation, or erroneously in effect adjudged a specific performance. Statutory requirements for the injunction were met. NRS 33.010. And the power to restrain the breach of a contract under proper circumstances and conditions has long been recognized. In Muncie Natural Gas Co. v. Muncie, 160 Ind. 97, 66 N.E. 436, 441, 60 L.R.A. 822 (1903), the court said: "[A]ppellee had a right to appeal to equity * * *. The city was a party to the contract, and it complains of the breach of a negative covenant. This is a case, so far as the covenant is concerned, for a negative specific performance by means of an injunction. A court of equity * * * will not suffer men to depart from their agreements at pleasure * * *." The contract, as found by the court, gave Redfield full control. In effect it was an agreement by Chisholm not to interfere with that control. Other necessary elements being present, it was a classic example of equity's right

to enjoin the breach. See discussion and citation of cases in 28 Am.Jur 853, Injunctions, sec. 85 et seq.

(5) Whatever difficulties might, before the adoption of NRCP, have attended the determination of whether the oral contract was void under the statute of frauds, or what problems of construction or analysis of the contract might have been involved (see Levy v. Ryland, 32 Nev. 460, 109 P. 905; Stanley v. Levy & Zentner Co., 60 Nev. 432, 112 P.2d 1047, 158 A.L.R. 76), the question is not now properly before us. Appellant did not plead the statute as an affirmative defense, nor, it may be noted, did he object to evidence of the oral contract, move to strike the testimony, or present the matter to the trial court in his motion for new trial or otherwise. Under Rule 8 (c) the defense must be specially pleaded, and under Rule 12 (b) and (h) , if not so pleaded, it is waived. Morgan Electric Co. v. Neill, 9th C.C.A., 198 F.2d 119.

(6) The trial court was apparently not asked to make a finding on consideration for the oral contract, but its finding in favor of the contract implies a finding of consideration. "Under our practice, when findings are not made or requested, any findings necessary to support the judgment are presumed." Murray v. Osborne, 33 Nev. 267, 277, 111 P. 31, 33. Our rules provide adequate opportunity for correction or modifications of the findings. These were not sought. In any event the existence of a consideration seems clear. The business had been running at a sizable loss and Redfield told Chisholm that it could not continue that way, that Redfield could not afford to keep putting up the money to pay the accruing bills, but that he was willing to let Chisholm continue as manager of the wholesale end while Redfield would have supervision of the entire operation. The implication is clear that Redfield would keep putting up the money to pay the accruing bills and would be willing to let Chisholm continue as manager of the wholesale end, provided that Chisholm would agree to sole control and

operation by Redfield. The extent of the consideration is manifest. Not only had Redfield put over a quarter of a million dollars into the business, but the very nature of the business indicated to both parties that the accruing bills would amount to very material sums, and that it would be incumbent upon Redfield to satisfy them. A balance sheet submitted by the accountants of the parties listed during the period July 1 to December 31, 1956 sundry amounts expended for overhead expense itemized as truck expense, yard expense, buying expense, selling expense, general and administrative expense, and were shown to average over $6,000 a month. This did not include actual purchases averaging over $34,000 a month. During the same period, income from sales averaged less than $20,000 a month. It is true that the statement showed an inventory December 31, 1956 of over $107,000, but neither this nor other existing assets minimizes (though it provides to some extent the means of reimbursement) the very material consideration growing out of Redfield's undertaking. See MacDonald v. Rosenfeld, 83 Cal.App.2d 221, 188 P.2d 519.

Affirmed with costs.

McNAMEE, C. J. and PIKE, J., concur.