[Civ. No. 19481. First Dist., Div. Two. May 25, 1961.]

E-P CONSTRUCTORS, INC. (a Corporation), Appellant, v. PETERSON TRACTOR COMPANY (a Corporation), Respondent.

Robert L. Bostick for Appellant.

Fitzgerald, Abbott & Beardsley for Respondent.

STONE, J. pro tem.*—Plaintiff appeals from a judgment for defendant in an action to recover two payments made by plaintiff to defendant on account of conditional sales contracts between defendant and Los Gatos Construction Company, a third party. Los Gatos purchased heavy construction equipment from defendant by three conditional sales contracts and was in default on interest and principal payments aggregating approximately $10,000. E. E. Ekloff, an experienced manager of heavy construction projects, together with a Mr. Pouey, president of Los Gatos, formed plaintiff corporation to enter the heavy construction business. They planned to have Los Gatos transfer its interest in five pieces of equipment to plaintiff, and in consideration therefor plaintiff was to assume the balance due on three conditional sales contracts, by which the equipment had been purchased from defendant. Plaintiff also was to transfer shares of its capital stock to Los Gatos. Ekloff was made president and Pouey vice-president of plaintiff corporation which then entered into an agreement with Los Gatos to purchase the equipment. Plaintiff took a bill of sale from Los Gatos subject to the encumbrances and agreed to pay and discharge the same. The bill of sale recited in part:

"Now, THEREFORE, LOS GATOS CONSTRUCTION Co. does hereby assign, transfer and set over all of its right, title and interest in and to the construction equipment described in schedule "A" hereof;

"AND

"E-P CONSTRUCTORS INC. accepts said assignment and transfer and respresents that it has inspected said equipment and accepts the same in its present condition and in connection therewith, acknowledges receipt of possession thereof;

"AND

"E-P CONSTRUCTORS INC. does hereby assume the encumbrances to which said described equipment is subject, namely an aggregate sum of $124,647.42, and no more, to Morris Plan, Peterson Tractor Co. and Pringle Tractor Co."

It is plaintiff's contention that the $124,647.42 did not include $10,000 which Los Gatos was then in default on the contracts.

Defendant, when notified by plaintiff and Los Gatos of the sale, made no objection and prepared assignments for plaintiff

---

*Assigned by Chairman of Judicial Council.

and Los Gatos to sign by which defendant would recognize plaintiff as purchaser under the conditional sales contracts in the place of Los Gatos. Plaintiff put off executing these documents because Los Gatos delayed paying the $10,000. The bill of sale from Los Gatos to plaintiff was executed May 22, 1957, and by June 20, not only had Los Gatos failed to pay the $10,000 arrearage, but an additional installment of interest in the sum of $608.08 had fallen due. Plaintiff mailed a check to defendant for that amount, accompanied by a voucher upon which the following was written under the heading "Description":

"Interest to 6/20/57 as follows:

"D8 Cont. Dated 4/5/57

DW10 and D8 Cont. Dated 1/8/54

2 DW20's Cont. Dated"

Los Gatos then promised plaintiff that it would pay the $10,000 by July 20, which it failed to do, and on that date additional payments of interest and principal accrued. Plaintiff again mailed a check to defendant, this time for $4,811.08, with accompanying voucher which under the heading "Description" read:

"July 20, 1957 payments on loans transferred from Los Gatos Construction Co. as follows:

| | Principal | Interest to 7/20/57 |
|---|---|---|
| "D8 Cont. dated 4/5/57 | 950.00 | 166.25 |
| 10 & D8 Cont. Dated 1/8/54 | 2000.00 | 70.00 |
| 2—DW20's Cont. dated 10/5/56 | 1425.00 | 199.83 |

"Balances after above payment:

"1—$27,550.00

2— 12,000.00

3— 32,832.00"

Los Gatos never paid the $10,000 and on September 4, 1957, plaintiff and Los Gatos mutually rescinded the bill of sale by simply writing on the face of the document "Rescinded 9/4/57" beneath which the president of each corporation placed his signature. In the spring of 1958 Los Gatos filed in bankruptcy, whereupon defendant repossessed. Plaintiff not having executed the agreement prepared and forwarded to it by defendant, demanded return of the two payments, contend-

ing that it was a mere volunteer; that it had received no consideration for the payments; that the payments were made pursuant to an agreement which was never consummated.

The trial court made a finding that there had been a sale and transfer of interest between Los Gatos and plaintiff by the bill of sale as approved by the minutes of the corporation. This agreement, the court found, deprived plaintiff of its status of a mere volunteer, and that the payments to defendant were made ". . . in order to remove in part the defaults which then existed under said Conditional Sales Contracts, . . ." The court further found that the payments were made ". . . in an effort thereby to induce defendant to extend the time at which it would insist upon payments due on account of principal by Los Gatos Construction Company. . . ."

Plaintiff's contention that the finding is not supported by the evidence must surmount the rule expressed by the Supreme Court in *Berniker* v. *Berniker*, 30 Cal.2d 439 at page 444 [182 P.2d 557] :

"As has so frequently been said, it is the general rule that on appeal an appellate court (1) will view the evidence in the light most favorable to the respondent; (2) will not weigh the evidence; (3) will indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact; and (4) will not disturb the finding of the trier of fact if there is substantial evidence in the record in support thereof."

The court had before it the bill of sale and the minutes of plaintiff corporation, both asserting a present transfer of the equipment. The finding is also supported by the mutual rescission of the bill of sale executed some three and one-half months after its date, and after the payments to defendant had been made. Additional supporting evidence was supplied by the vouchers of transmittal which accompanied the two payment checks. They were on plaintiff's stationery addressed to defendant and specifically directed that the payments be applied on the conditional sales contracts.

The testimony concerning the sale of the equipment from Los Gatos to plaintiff and the assumption of the obligations of the conditional sales contracts by plaintiff was conflicting. Certainly the testimony of the president of plaintiff corporation conflicted with the written documents referred to above. To resolve such conflicts is not our province, but that

of the trial court. This is aptly pointed out by the Supreme Court in *Berniker* v. *Berniker, supra,* at page 444, as follows:

"It must be remembered that the trial court was face to face with the witnesses and had the opportunity to judge, from their demeanor on the stand and their manner of testifying, which of those giving positive testimony were worthy of credence."

Also, the trial court is not bound from testimony alone to determine whether there was a contract, and if so the attributes thereof, but may consider the acts of the participants as well. A similar situation confronted the court in *Weidner* v. *Zieglar,* 218 Cal. 345 [23 P.2d 515], and it commented as follows at page 349:

"Considerable time and attention is devoted by counsel to the authorities dealing with the assumption of liability under a contract by an assignee thereof. There is nothing mysterious about the rule of law announced therein, nor is there any conflict in the cases when read in the light of that which governs, to wit: the intent of the parties, construed *either* by their acts, the subject matter of the contract or their words." [Emphasis supplied.]

Plaintiff's next argument is predicated upon a clause in the conditional sales contracts between defendant and Los Gatos requiring the seller's consent to any assignment of the buyer's interest. This clause, plaintiff asserts, makes the bill of sale between Los Gatos and plaintiff void since the consent to the transfer, prepared by defendant, was never signed by plaintiff. The law is to the contrary, the landmark case being *Johnston* v. *Landucci,* 21 Cal.2d 63, which holds at page 67 [130 P.2d 405, 148 A.L.R. 1355]:

"Although there are no cases directly in point in California, the overwhelming weight of authority in other jurisdictions is to the effect that provisions against assignment, such as that contained in paragraph 17 of the Miller & Lux contract, are for the benefit of the vendor only, and in no way affect the validity of an assignment without consent as between the assignor and assignee. In other words, the interest of the assignor in the contract passes to the assignee, subject to the rights of the original seller." (See also *Bowden* v. *Bank of America,* 36 Cal.2d 406, 414 [224 P.2d 713].)

Plaintiff also attacks the finding that plaintiff made the two payments ". . . in an effort thereby to induce defendant to

extend the time at which it would insist upon payments due on account of principal by Los Gatos Construction Company. . . .'' and the finding that: ''. . . Defendant by reason of such payments impliedly agreed to and did extend the time at which defendant would insist upon payments of amounts due on account of principal from Los Gatos Construction Company to the defendant on the three contracts covering the five pieces of heavy construction equipment referred to herein.'' If the payments were made in consideration of a forbearance by defendant, plaintiff was not a volunteer.

 Plaintiff cites authority holding that in order to constitute a valid consideration, the act of forbearance must be performed pursuant to and in reliance on an agreement. This is a correct statement of the law, but it is not a complete statement since the promise to forbear may be implied as well as express. (*Wine Packing Corp. of Calif.* v. *Voss,* 37 Cal.App.2d 528 [100 P.2d 325] ; *MacDonald* v. *Rosenfeld,* 83 Cal.App.2d 221, 237 [188 P.2d 519].) Counsel for plaintiff asked Mr. Ekloff, president of the corporation, the following question concerning the July 10 payment:

''Q. What was your purpose in making the July payment?'' and the answer, in part, was:

''A. I made the July payment to show my good faith or the good faith in E-P that they would consummate their contractual obligation after assignments had been prepared and made to them, and the fact that I had established with them July 20th—*and I asked for a moratorium for that period. . . .*'' [Emphasis supplied.]

Again, the record discloses that plaintiff's counsel, in questioning the vice-president of defendant corporation about the forbearance, asked the following question and received the following answer:

''Q. Had you not received the payment in June would you have repossessed the equipment? A. We would have repossessed much earlier than we finally did. That is the only way I could decide it. The account was in very critical condition.''

 The quoted testimony is sufficient to sustain the court's finding that there was an implied agreement to forbear in return for plaintiff's payment with request for a ''moratorium.'' In addition to the testimony, we find in point the following language from *Greenfield* v. *Sudden Lumber Co.,* 18 Cal.App.2d 709, at page 716 [64 P.2d 1007] :

"The evidence also supports the finding that the respondents agreed to refrain from enforcing their claim against the Washington company and from selling or liquidating its assets. Not only may such inference be drawn from the testimony, but the fact that they forbore is evidence of an agreement to forbear. 13 Corpus Juris, page 348, section 200: 'An actual forbearance is evidence of an agreement to forbear.' " (See also *Anglo Calif. Nat. Bank* v. *Far West Lbr. Co.*, 152 Cal. App.2d 284, 287 [313 P.2d 10].)

The judgment is affirmed.

Draper, Acting P. J., and Shoemaker, J., concurred.