[Civ. No. 20042.   First Dist., Div. Two.   Feb. 15, 1963.]

EMIL  SCHWERIN  et  al.,  Plaintiffs  and  Respondents,  v.
L. K. SHOSTAK, Defendant and Appellant.

Francis J. Kelly, Donovan, Stuhr & Martin and Laurence M. Donovan for Defendant and Appellant.

Frank A. Flynn for Plaintiffs and Respondents.

THE COURT.—This is an appeal by defendant L. K. Shostak from a judgment rendered on a promissory note in favor of plaintiffs Emil and Lotte Schwerin.

The note sued upon was in the face amount of $1,249.90, and the complaint was originally filed in municipal court. Defendant answered and cross-complained for declaratory relief, alleging that the note was executed concurrently with a second note, and that both notes were given without consideration and were intended to be effective only if cosigned by one Stephen J. Reuben. In addition, defendant alleged that if there was any obligation owing from him to plaintiffs, the same was secured by a deed of trust on real property owned by Reuben, and plaintiffs were therefore limited to one form of action (exhaustion of the security), under Code of Civil Procedure, section 726. Defendant prayed for a judicial declaration that both notes were null and void, and that plaintiffs were limited to one form of action for the recovery of the obligation secured by the deed of trust. Upon the filing of this

cross-complaint for declaratory relief, the municipal court ordered the action transferred to the superior court.

At the trial, it was developed that plaintiff Emil Schwerin, a real estate broker, was the owner of a note and first deed of trust in the amount of $7,100 on a Hyde Street property owned by Arcady and Dora Solovieff, and that plaintiff had handled several real estate transactions for the defendant. Early in 1958, defendant evinced interest in purchasing this Hyde Street property, and plaintiff offered to contact the Solovieffs and see if he could arrange a sale. In the event that a sale took place, plaintiff and defendant agreed that plaintiff would subordinate his first deed of trust in order that defendant might obtain a first loan of $30,000 on the property; also, that defendant, immediately upon obtaining a loan of $30,000, would pay off plaintiff's deed of trust in the amount of $7,100 and his broker's commission of $2,500.

Plaintiff succeeded in negotiating a sale of the property and at the direction of defendant, the Solovieffs, by grant deed of April 30, 1958, conveyed the property to Stephen J. Reuben, a nephew of defendant. The property was placed in Reuben's name because he had agreed to manage the property in exchange for half the proceeds on resale. City Savings and Loan Association then loaned $30,000 to defendant on the property, secured by a first deed of trust. Although the loan was in the face amount of $30,000, the amount actually paid him, after deduction of loan fees, amounted to $28,702.50. The sellers took back a second deed of trust in the amount of $18,400.

Defendant informed plaintiff that he had been unable to obtain a loan in the amount of $30,000, and that he was unable to pay the $9,600 necessary to cover plaintiff's deed of trust and broker's fees. After some discussion between the parties as to what amount defendant could pay at that time, plaintiff accepted $5,000 in cash and a promissory note in the amount of $4,521.65, secured by a third deed of trust. The note, which was dated May 1, 1958, was signed by both defendant and Reuben. It provided for monthly payments and was due on May 1, 1960. The deed of trust of the same date was signed only by Reuben.

When plaintiff subsequently received a closing statement from the title company which had handled the escrow for the sale, he discovered that defendant had in fact obtained a first loan in the amount of $30,000. Plaintiff then called defendant and informed him that he was entitled to payment in full

and would never have accepted partial payment and a third deed of trust had he known that defendant had obtained the $30,000 loan. Although defendant insisted that he had paid a considerable sum in loan fees, plaintiff informed him that this was of no concern to him and that their agreement called for payment in full as soon as a $30,000 loan had been obtained.

Plaintiff thereafter made repeated attempts to collect from defendant, but was unsuccessful. Finally, on November 25, 1958, he went to see defendant and informed him that he was unwilling to wait any longer. At that time, defendant stated that he was about to receive some money from the sale of certain property in Sacramento. He stated that he could not pay plaintiff in full at that time, but was willing to give plaintiff two new promissory notes, the smaller of which would be payable on January 15, 1959, and the larger of which would provide for monthly payments and be due on January 1, 1960, but which would be renewable for an additional year in the event that defendant had been unable to resell the Hyde Street property by the original due date. Defendant stated that he would have Reuben cosign the notes because the Hyde Street property was in Reuben's name, and defendant had "nothing in writing" from his nephew. Plaintiff then had two notes drawn up in the manner suggested by defendant. The notes were in the aggregate amount of $4,749.90, that being the amount due on the prior note of May 1 plus accrued interest. The smaller of the two notes, which was payable on January 15, 1959, was in the amount of $1,249.90. The second note was in the amount of $3,500. Both notes were signed by defendant on January 15, 1959. Although the notes were drawn in such a manner as to provide for Reuben's signature, he refused to sign.

Although the note for $1,249.90 was due on the day defendant signed it, he refused to pay it. On May 15, 1959, plaintiffs commenced the instant proceeding on the note. Subsequent to the filing of the complaint, Reuben defaulted on his payments under the first and second deeds of trust, and the Solovieffs, as holders of the second, served notice of default. On December 17, 1959, the Solovieffs exercised their power of sale and bought the property at the trustee's sale. The third deed of trust in favor of plaintiffs was not protected at the sale and was rendered valueless thereby.

Upon this evidence, the trial court found that the two promissory notes executed on January 15, 1959, were given

in satisfaction of and for the purpose of cancelling and discharging the promissory note of May 1, 1958; that there was no agreement between the parties that defendant's signature on the January 15 notes would be ineffective unless the notes were cosigned by Reuben; that Reuben was in fact the agent and *alter ego* of defendant, who was the real owner of the Hyde Street property; that the January 15 promissory notes were supported by consideration; that the January 15 note in the amount of $1,249.90 was wholly unpaid. The court concluded that the promissory note of May 1, 1958, and the deed of trust securing it, were discharged and cancelled upon the execution of the January 15 notes, and plaintiffs were therefore under no obligation to proceed pursuant to Code of Civil Procedure, section 726. Judgment was accordingly entered in favor of plaintiffs in the amount of $1,249.90, plus interest. The note and deed of trust of May 1, 1958, were adjudged cancelled and discharged, and the note of January 15, 1959, was adjudged a valid and legal obligation. From this judgment, defendant appeals.

Appellant raises two contentions: (1) that there was no evidence in support of the finding that the two notes of January 15, 1959, were supported by consideration; and (2) that the trial court erred in concluding that the execution of the January 15 notes operated as a discharge and cancellation of the note and deed of trust of May 1, 1958.

Appellant's assertion that the January 15 notes were supported by no consideration is without merit. ▆▆▆ First of all, both notes recite that they were given "for value received." Such a recital raises a presumption of consideration. (*Kelley* v. *Rouse* (1961) 188 Cal.App.2d 92, 96 [10 Cal. Rptr. 235].) Appellant directs this court's attention to no evidence tending to rebut this presumption. In addition, there was affirmative evidence to the effect that the notes were given in return for respondent's promise not to institute proceedings to obtain immediate payment of the debt owed him by appellant. It must be remembered that respondent accepted the May 1, 1958, note and deed of trust only because he was unaware that appellant had in fact been able to obtain a first loan on the Hyde Street property in the amount of $30,000. Upon learning of this fact, he immediately demanded payment in full from appellant. Respondent testified that he accepted the January 15 notes because appellant had informed him that his finances were in a "mess" and that if respondent took him to court, it would take him several

months to get his money. Appellant informed him that he would get his money quicker if he accepted the two short term notes and instituted no proceedings to enforce immediate payment. ▇ The fact that respondent did accept the notes and forebore from suit is itself evidence that the notes were given in exchange for his promise to forebear. (*E-P Constructors, Inc.* v. *Peterson Tractor Co.* (1961) 192 Cal.App. 2d 518, 524-525 [13 Cal.Rptr. 569]; *MacDonald* v. *Rosenfeld* (1948) 83 Cal.App.2d 221, 237 [188 P.2d 519].) Such a promise was clearly sufficient consideration for the execution of the notes.

▇ We pass now to appellant's contention that the trial court erred in holding that the note and deed of trust of May 1, 1958, were cancelled and discharged upon execution of the January 15 notes. The testimony of both parties expressly negates an intention to cancel and discharge either the note or deed of trust. Appellant testified that the January 15 notes were intended to be substituted for the May 1, 1958 *note,* but that both parties intended that the May 1 *deed of trust* remain in effect as security for the new notes. Respondent similarly testified that he had never agreed to reconvey the May 1 deed of trust until payment in full of the January 15 notes. Respondent's deposition, which was read into evidence at the trial, contained the statement that he had left the deed of trust on deposit at the title company under specific instructions to reconvey only upon payment in full of both the January 15 notes.

The trial court found that the May 1 note was intended by the parties to be cancelled and discharged upon execution of the January 15 notes. The court made no finding, however, that the parties intended the *deed of trust* to be similarly discharged. The absence of such a finding is clearly in accord with the evidence above summarized, which expressly negates any such agreement. In its conclusions of law, however, the court held that the deed of trust was in fact discharged upon cancellation of the May 1 promissory note. In so holding, the court was obviously of the opinion that the parties, regardless of their intention, could not cancel the May 1 note without causing the underlying security to be simultaneously discharged by operation of law. This premise finds no support in the authorities. ▇ The rule is that a mortgage or deed of trust secures the debt and not the note, bond, or other evidence of debt. ▇ Accordingly, the mortgage or deed of trust will continue as long as the underlying debt is kept

alive, and a mere change in the form of the debt secured or in the mode or time of payment will not operate to discharge the security. (*London & San Francisco Bank* v. *Bandmann* (1898) 120 Cal. 220, 222 [52 P. 583, 65 Am.St.Rep. 179]; *Sather Banking Co.* v. *Arthur R. Briggs Co.* (1903) 138 Cal. 724, 733 [72 P. 352]; 34 Cal.Jur.2d, § 385, p. 53; Osborne on Mortgages, § 105, pp. 255, 258.)

Here, the January 15 notes clearly constituted a mere change in the form of appellant's indebtedness. The aggregate sum of the two notes was equal to the May 1 note plus accrued interest. The underlying debt remained the same and was changed only in form and time of payment. Consequently, the execution of the January 15 notes did not operate, contrary to the parties' intent, to discharge the deed of trust in respondents' favor.

However, a reversal of the judgment is not required. On December 17, 1959, the Solovieffs exercised the power of sale under their second deed of trust, and bought the Hyde Street property at the trustee's sale. Although this sale took place subsequent to the commencement of the instant action, and also subsequent to the filing of the parties' pretrial statement, appellant made no objection to the introduction of evidence pertaining to this sale. Respondent was allowed to testify that his third deed of trust had been rendered valueless as a result of the sale. At a subsequent stage in the proceedings, appellant's own counsel, while cross-examining respondent, inquired as to the date of this sale and whether respondent had been present.

The record thus contains uncontradicted evidence that the sale did take place and that respondents' third deed of trust was thereby rendered valueless. Under such circumstances, it was proper for the trial court to render judgment in respondents' favor in the amount of the promissory note for $1,249.90. It has long been the law in California that the "one form of action" rule of section 726 does not apply to a sold-out junior lienor. (*Savings Bank of San Diego County* v. *Central Market Co.* (1898) 122 Cal. 28, 33-36 [54 P. 273]; see also *Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 39 [27 Cal.Rptr. 873, 378 P.2d 97].) While it is true that in each of these cases, the sale had taken place before action was commenced on the note, whereas here the sale had taken place after the action had been started but before trial, nevertheless we believe the same rule should apply. Even as the cases we have cited hold that there is no reason to

compel a junior lienor to go through foreclosure and sale when there is nothing left to sell, so we opine there is no reason that requires a reversal in order that suit may be reinstituted merely for the purpose of setting forth that the security had become valueless before the action was commenced. Such procedure would needlessly delay justice and further burden the courts.

The final matter for determination is whether respondents are entitled to an award of attorney's fees on appeal. ▮ The note sued upon expressly provides that if action be instituted on the note, appellant shall pay such sum as the court may fix as attorney's fees. The trial court found this provision to be a valid obligation, and awarded respondents the sum of $175 for attorney's fees for services rendered in that court. Respondents now seek an additional award of attorney's fees for their services in connection with this appeal. Such allowance is proper. (*Wilson* v. *Wilson* (1960) 54 Cal.2d 264, 272 [5 Cal.Rptr. 317, 352 P.2d 725].) It appears to us that the sum of $350 is a reasonable fee for the attorney on this appeal.

The judgment is affirmed, and appellant is ordered to pay to respondents additional attorney's fees on this appeal of $350.

A petition for a rehearing was denied March 6, 1963, and appellant's petition for a hearing by the Supreme Court was denied April 9, 1963.