[Civ. No. 36528. Second Dist., Div. Two. Mar. 26, 1971.]

BEVERLY HILLS NATIONAL BANK, Plaintiff and Respondent, v. JOHN D. GLYNN, Defendant and Appellant.

**COUNSEL**

Hill, Farrer & Burrill and Jack R. White for Defendant and Appellant.

Loeb & Loeb and Albert F. Smith for Plaintiff and Respondent.

**OPINION**

**HERNDON, Acting P. J.**—This is the second appeal in this case. On the former appeal the judgment of the trial court was affirmed with respect to three causes of action on which plaintiff bank had prevailed, but was reversed to the extent that it was favorable to the defendant on two other causes of action. Reference is made to the decision of Division Four of this court in *Beverly Hills Nat. Bank* v. *Glynn,* 267 Cal.App.2d 859 [73 Cal.Rptr. 808], for a more complete statement of the case and for a more detailed summary of the evidence than we deem it necessary to set forth herein.

Following the partial reversal the action was brought on for a second trial on the two causes of action affected by the reversal. The judgment in favor of the bank on the other three causes of action had become final upon the denial of defendant's petition for a hearing in the Supreme Court. At the conclusion of the second trial the court below held that plaintiff was entitled to recover on the two remaining causes of action and ordered the original judgment modified accordingly. Defendant has appealed from the order and the judgment as modified thereby.

### Statement of the Case

Plaintiff bank instituted this action against defendant Glynn, an attorney at law, by filing a complaint which stated five separate causes of action. The first and second causes of action sought enforcement of two promissory notes of which defendant was the maker and plaintiff the payee.

The third, fourth and fifth causes of action sought enforcement of defendant's liability under the terms of a continuing guaranty executed by defendant as surety and by which he guaranteed payment of "all sums of money which the bank heretofore has advanced or loaned or hereafter advances or lends" to one James R. O'Toole. These latter three causes of action alleged that plaintiff had made three separate loans to O'Toole evidenced by his promissory notes, two of which were in the amount of $3,500 and the third in the amount of $1,900 and as to each of which O'Toole had defaulted by nonpayment.

By his amended answer defendant alleged with respect to the two promissory notes involved in the first two causes of action that although he was nominally the maker, he was in fact only a surety. By way of defense to the three causes of action on the continuing guaranty, defendant alleged (1) that there was a lack of consideration for his undertaking as to each of the O'Toole loans; and (2) that the guaranty was invalid and unenforceable for the reason that he had been induced to execute the instrument by misrepresentations made by the bank's loan official, W. J. Marshall, and by Marshall's concealment of and failure to disclose material facts with respect to the financial condition of O'Toole, the principal debtor.

At the conclusion of the first trial the court rejected defendant's contentions with respect to his liability upon the two promissory notes signed by him as maker and ordered judgment against him on the first two causes of action. As to the three causes of action on the continuing guaranty, the trial court rejected defendant's contention that he had been induced to execute the guaranty instrument by fraudulent misrepresentation and concealment. The findings of fact include the following:

"At no time did plaintiff [bank] or any of its agents, officers or representatives intentionally or negligently or in any other way withhold or conceal any information from defendant. . . ."

"At no time did defendant rely upon any representation, statement or information furnished by plaintiff or any of its officers, agents or representatives. At no time did defendant rely upon the financial statement of O'Toole dated January 18, 1963, in the possession of plaintiff nor did defendant at any time rely upon any other financial information or data within the possession or control of plaintiff or its officers, agents or representatives."

". . . It is not true that said W. J. Marshall or any other officer, agent or representative of plaintiff falsely stated the nature or extent of the financial condition of O'Toole or concealed or suppressed information re-

garding the existence of obligations owed by O'Toole to plaintiff or other banks. . . ."

". . . It is not true that misrepresentations were made by plaintiff or any of its officers, agents or representatives or that plaintiff, its officers, agents or representatives failed to disclose or withheld from defendant material information. . . ."

Although the court at the first trial held that the continuing guaranty was a valid contract and enforceable against defendant with respect to the O'Toole loan made subsequent to its execution, it was held unenforceable as to the two previous loans involved in the causes of action which are the subject of our review on the instant appeal. The sole basis for the holding of the first trial court that the guaranty was unenforceable as to the two loans with which we are now concerned was the erroneous conclusion that as to these two loans the guaranty was without consideration. The error in this conclusion is clearly and convincingly exposed by the decision in *Beverly Hills Nat. Bank* v. *Glynn, supra,* at pages 867-868.

With respect to the third loan to O'Toole which was made *subsequent* to defendant's execution of the guaranty and which was the basis of plaintiff's fifth cause of action, the trial court rejected the defense of lack of consideration and, as we have previously indicated, found *that defendant had not been induced to execute the guaranty by any form of fraud.* Judgment in favor of plaintiff on the fifth cause of action was ordered.

On the basis of detailed findings of fact and conclusions of law, judgment was entered in favor of plaintiff on the first, second and fifth causes of action and in favor of defendant on the third and fourth causes of action. Both parties appealed. As we indicated at the outset, the cited decision of Division Four of this court affirmed the judgment in favor of plaintiff on the first, second and fifth causes of action and reversed the judgment in favor of defendant on the third and fourth causes of action.

It would unnecessarily extend this opinion to quote at length from the former opinion in this case. It suffices for present purposes to observe that in affirming the judgment on the fifth cause of action, this court *rejected* defendant's contentions (1) that the trial court had erred in finding that defendant had not been induced to execute the guaranty by any form of fraudulent misrepresentation or concealment of facts relating to O'Toole's financial condition; (2) that the trial court had erred in excluding evidence offered by defendant; and (3) that numerous of the findings of fact, including those hereinabove quoted, were not supported by the evidence.

The former decision of this court was filed on December 4, 1968. Defendant filed a timely petition for rehearing. Thereafter, on December 24,

1968, the Supreme Court of California filed its decision in *Sumitomo Bank of Cal.* v. *Iwasaki,* 70 Cal.2d 81 [73 Cal.Rptr. 564, 447 P.2d 956]. Defendant's first petition for rehearing was denied on December 26, 1968. Defendant immediately filed a second petition for rehearing wherein he argued that the decision of this court was inconsistent with the subsequently filed opinion of the Supreme Court in the *Sumitomo* case. In denying defendant's second petition for rehearing, this court filed a brief opinion reading as follows:

"In that petition, defendant cites to us, and relies on, the opinion of the Supreme Court in *Sumitomo Bank of California* v. *Iwasaki,* filed on December 24, 1968 [70 Cal.2d 81, 73 Cal.Rptr. 564, 447 P.2d 956], after our opinion herein was filed. We have read that opinion. Not only does it not support defendant's contentions but both its language and its holding give further support to our decision in this case although, in light of *Sumitomo,* some of our language was too broad. *Sumitomo* makes it clear that the creditor owes to a credit-surety no duty of voluntary disclosure of facts that it knows about the debtor unless '(a) "the creditor has reason to believe" that those facts materially increase the risk "beyond that which the surety intends to assume"; (b) the creditor "has reason to believe that the facts are unknown to the surety"; and (c) the creditor "has a reasonable opportunity to communicate" the facts to the surety.' Nothing in the record of the case at bench would support a finding favorable to defendant as to either (a) or (b). Glynn, an experienced attorney and business man, had signed a guaranty for a client of some years' standing, at the client's request, which guaranty contained a specific reference to pre-existing debts. We do not know what O'Toole had told Glynn, nor does the record show that the bank was any more aware of the discussions between Glynn and O'Toole than we are now. Glynn presently makes much of an allegedly false financial statement that lay on Marshall's desk. But, at the trial, contrary to his unsworn statements in his briefs, Glynn went no further than to say that he 'thought' he might have 'glanced' at such a statement but had not analyzed it in detail. In short, the only findings that this record would support are that Marshall was fully entitled to believe that Glynn knew full well the risks he ran and that he was assuming those risks voluntarily in order to favor his client. On such a record, *Sumitomo* compels the decision which we reached." (*Beverly Hills Nat. Bank* v. *Glynn, supra,* 267 Cal.App.2d 859, 870-871.)

On February 26, 1969, the Supreme Court of California denied defendant Glynn's petition for a hearing. On March 3, 1969, this court's remittitur was filed in superior court. Thereafter plaintiff moved the trial court for the setting of a hearing to reassess the amount of attorney's fees to which it was entitled and for a trial with respect to the third and fourth causes of

action. Some three months following the entry of the order setting the cause for retrial defendant filed a notice of motion seeking leave to file an amended answer which set forth what purported to be a new affirmative defense together with four new and separate counterclaims. The trial court granted defendant leave to file an amended pleading, adding a "Fourth Separate and Affirmative Defense." Leave to file the four new counterclaims was denied.

The new pleading which defendant was permitted to file one week before the trial date makes substantially the same allegations with respect to the failure of the bank to disclose material facts which were made in the second affirmative defense of the amended answer previously filed and which were the subject of extensive testimony offered and received at the original trial.

At the opening of the second trial plaintiff presented its trial memorandum in which it argued on the basis of precedents applying the doctrines of res judicata and collateral estoppel that defendant should not be permitted to relitigate the issue of the alleged nondisclosure of material facts affecting the guarantor's risk on the basis of pleadings and proof substantially identical to those upon which the prior adjudication had been made.

After defendant had made his offer of proof, the trial court concluded that the proffered evidence was substantially the same as that which had been offered at the former trial. Accordingly, the trial court held that the application of the doctrines of res judicata and collateral estoppel precluded the relitigation of the issues of law and fact which had been finally determined on the prior appeal. On this basis the court ordered that the judgment theretofore entered be amended to allow plaintiff recovery on its third and fourth causes of action. The present appeal is taken from that order.

## The Determinative Issue

■ The ultimate issue determinative of the instant appeal is this: Did the trial court rule correctly in holding that the defenses of fraudulent nondisclosure and lack of consideration were foreclosed by the application of the doctrine of res judicata? We have concluded that the determination of the court below was correct for these reasons: (1) The issues of law and fact decided by the judgment in favor of plaintiff on the fifth cause of action were identical with those tendered at the second trial on the third and fourth causes of action; (2) the judgment in favor of plaintiff on the fifth cause of action was a judgment on the merits which became final after its affirmance by the Court of Appeal and the denial of a hearing by the Supreme Court; and (3) the evidence offered by defendant at the second trial on the issues of fact tendered by his pleaded defenses was substantially

the same as that which he had offered at the first trial to prove the identical defenses of fraudulent concealment and lack of consideration.

## The Doctrine of Res Judicata and Its Application

In *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439], the dual aspect of the doctrine of res judicata and the elements essential to its application were restated as follows: "The doctrine of res judicata has a double aspect: (1) it 'precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction.' (2) 'Any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit on a different cause of action.' (*Bernhard* v. *Bank of America,* 19 Cal.2d 807, 810 [122 P.2d 892]; see *Taylor* v. *Hawkinson,* 47 Cal.2d 893, 895-896 [306 P.2d 797].) In the present case, since plaintiffs' cause of action is different from that of the state in the criminal proceeding, we are concerned with the latter aspect, often termed collateral estoppel.

"In the *Bernhard* case, *supra,* this court rejected the doctrine of mutuality of estoppel that had been applied to limit the scope of collateral estoppel, and held three questions to be pertinent in determining the validity of the plea. 'Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?' (19 Cal.2d at p. 813.) . . ."

In *Lortz* v. *Connell* (1969) 273 Cal.App.2d 286, 296-297 [78 Cal. Rptr. 6], the rules governing the application of the doctrine of collateral estoppel were stated with a quotation from *Todhunter* v. *Smith* (1934) 219 Cal. 690 [28 P.2d 916], as follows: "In *Todhunter* v. *Smith, supra,* the court ruled: 'By virtue of the doctrine of *res judicata* the final determination of a court of competent jurisdiction necessarily affirming the existence of any fact is conclusive evidence of the existence of that fact when it is again in issue in subsequent litigation between the same parties in the same or any other court. The facts decided in the first suit cannot be disputed or relitigated although the later suit is upon a different cause of action. [Citations.] The doctrine of *res judicata* has a double aspect. A former judgment operates as a bar against a second action upon the same cause, but in a later action upon a different claim or cause of action, it operates as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action.' (219 Cal. at pp. 694-695.) The trial court could not directly disregard

this doctrine because it believed the earlier case was improperly decided. It is concluded that it cannot do so indirectly for the same reasons.

"However, the logical application of the doctrine of collateral estoppel reveals a possible flaw in plaintiff's case. As noted in *Sutphin* v. *Speik, supra* [15 Cal.2d 195 (99 P.2d 652, 101 P.2d 497)]: '. . . the rule goes further. If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable.' [Citations.]"

■ The applicable rule was stated as follows in *Berry* v. *City of Santa Barbara* (1967) 248 Cal.App.2d 438, 445 [56 Cal.Rptr. 553]: "Collateral estoppel, or estoppel by judgment, is the secondary aspect of *res judicata*. A final judgment in a prior action between the same parties, or their privies, prevents the relitigation in a subsequent action between them of issues of fact, actually and necessarily litigated and determined between them in the prior action, though the causes of action in the two actions differ. [Citations.]"

Policy considerations underlying the doctrines under discussion were emphasized in *Sterling* v. *Galen* (1966) 242 Cal.App.2d 178 [51 Cal.Rptr. 312], with quotations from controlling precedents including *Panos* v. *Great Western Packing Co.* (1943) 21 Cal.2d 636 [134 P.2d 242], to the effect that "[a]n erroneous judgment is as conclusive as a correct one."

■ Defendant has argued that the unqualified reversal of the trial court's judgment favorable to him on the third and fourth causes of action operated to set the case "at large for readjudication of all issues as though they had never been tried" and "requires a complete new trial with no restrictions on the evidence which may be offered on the issues raised by the pleadings." On the basis of this premise defendant concludes that the judgment adverse to him on the fifth cause of action, which became final upon its affirmance, could not properly be utilized at the retrial as the basis for the application of the doctrine of res judicata.

We reject defendant's conclusion, which is based upon the well settled law relating to the effect of an unqualified reversal, as a *non sequitur*. When the three elements essential to the application of the doctrine of res judicata are established, then, by virtue of the overriding considerations of policy upon which that doctrine is based, the law's command that it be

applied is equally as plain and unequivocal on a retrial after reversal as it is upon the first trial of any action.

In other words, the reversal of the portion of the judgment which dealt with the third and fourth causes of action does not operate to immunize those causes of action from the effect of the final adjudication of the issues which were decided by the trial court and by the Court of Appeal in disposing of the fifth cause of action. Granting that an unqualified reversal sets a case "at large" as though it had not been tried, it stands on precisely the same footing as *any* case before trial. However, it remains true that in any trial or in any judicial or administrative proceeding, the doctrines of res judicata and collateral estoppel foreclose the relitigation of issues decided in a prior adjudication. As the Supreme Court stated in *French* v. *Rishell* (1953) 40 Cal.2d 477, 481 [254 P.2d 26]: "We are of the opinion, however, that the difference in burden of proof does not justify any exception to the general rule of res judicata. [Citations.] █ As stated in 2 Freeman on Judgments [5th ed.], section 641, pages 1349-1350, 'In order that an adjudication in one court or tribunal should be regarded as res judicata upon the matters there determined when they come again in question in another tribunal, it is obviously not necessary that the same rules of law, practice or evidence should prevail in both tribunals. The attempt to impose any such limitation would defeat the whole purpose of the rule. . . . All that is essential therefore is that a party should have been given one opportunity for the judicial determination of an issue by a tribunal having the requisite authority and proceeding in a manner recognized as due process of law.' . . ."

Defendant further argues that "[t]he non-disclosure question determined by the final adjudication on the fifth cause of action was one of law and was rendered erroneous by a supervening decision of the California Supreme Court. Accordingly, a recognized exception to the doctrine of collateral estoppel must be applied to prevent an injustice."

The decision of the California Supreme Court in *Sumitomo Bank of Cal.* v. *Iwasaki, supra,* is referred to as the "supervening decision" which demonstrates that the decision of the Court of Appeal on the former appeal affirming the judgment adverse to him on the fifth cause of action was an erroneous decision.

As we have previously recited, the opinion in *Sumitomo* was filed before the former decision of this court became final. Defendant relied upon *Sumitomo* in petitioning for a rehearing. In denying the rehearing this court filed the modification of its original opinion which we have quoted in full in our statement of the case, *supra.* As the language of that modification plainly shows, the participating justices, after reading and considering

*Sumitomo,* declared their conclusion that "Not only does it not support defendant's contentions but both its language and its holding give further support to our decision in this case although, in light of *Sumitomo,* some of our language was too broad." Finally, after further discussion of the law enunciated in *Sumitomo* as it applied to the evidence and the findings of the trial court in the case at bench, the opinion concludes: "In short, the only findings that this record would support are that Marshall was fully entitled to believe that Glynn knew full well the risks he ran and that he was assuming those risks voluntarily in order to favor his client. On such a record, *Sumitomo* compels the decision which we reached."

In his petition for a hearing in the Supreme Court, defendant, of course, relied mainly upon the contention that the law as stated and applied by this court was inconsistent with *Sumitomo.* This petition was denied with the result that the judgment on the fifth cause of action became final. The fact that we agree with the decision of Division Four of this court on the former appeal is immaterial in the light of the well settled law that under these circumstances a former adjudication is binding whether it was correct or erroneous.

■ As stated in 3 Witkin, California Procedure, at pages 1936-1937: ". . . The judgment is on the merits if the substance of the claim is tried and determined, no matter how wrongly it is decided. In other words a judgment is binding and conclusive against collateral attack though it is harsh and unjust, contrary to the evidence, or based upon errors of law. [Citations.]"

As stated in *Zeppi* v. *State of California* (1962) 203 Cal.App.2d 386, 388 [21 Cal.Rptr. 534]: "In every instance where a rule established by case law is changed by a later case the earlier rule may be said to be 'mistaken'—in one sense of the word. It also may be said to be 'unjust'; otherwise it would not have been changed. Such 'mistakes' or 'injustices' are not a ground for equity's intervention. So to hold would be to emasculate, if not wipe out, the doctrine of res judicata because the doctrine is most frequently applied to block relitigation based upon contentions that a law has been changed. Our courts have repeatedly refused to treat the self-evident hardship occasioned by a change in the law as a reason to revive dead actions; . . . [citations and illustrations of the rule omitted]."

■ In further support of his contention that a change in the law was effected by the "supervening decision" in *Sumitomo,* defendant argues that the instant case falls within the "exception" to the doctrine of collateral estoppel expressed in section 70 of the Restatement of Judgments. The Restatement expresses the view that collateral estoppel will not foreclose

subsequent litigation of a *question of law* which has been determined in a former adjudication.

In seeking to invoke section 70 of the Restatement of Judgments to the circumstances of the case at bench, defendant has misconceived the scope of section 70 and the conceptual basis for its application. This section applies only to a situation in which, on a subsequent trial or proceeding, a party seeks to foreclose his adversary from asserting a tenable position on a question of *law* by invoking the doctrine of collateral estoppel based upon a prior determination of that question of law.

It is apparent that section 70 has no application in determining the effect of a prior adjudication of an issue of *fact*. In the case at bench the judgment holding defendant liable on the fifth cause of action was based upon factual findings, the most pertinent of which we have quoted in our statement of the case, to the effect that the guaranty instrument executed by defendant was not rendered unenforceable by reason of the alleged nondisclosure of material facts affecting the guarantor's risk. These findings upon *factual* issues were not subject to relitigation under the circumstances of this case as all of the authorities dealing with the principles of res judicata and collateral estoppel definitely hold.

Moreover, even the special exception set forth in section 70 of the Restatement, applicable only to questions of law, is not applicable in a case such as this in which the subsequent proceedings involve the same subject matter or transaction. In these circumstances the prior adjudication is conclusive in subsequent litigation between the same parties even as to questions of law. This qualification of the "exception" expressed in section 70 of the Restatement is well illustrated by comment b to section 70 which reads in pertinent part:

"b. *Where causes of action arise out of the same subject matter or transaction.* Where a question of law is actually litigated and determined in an action, the determination is ordinarily conclusive between the parties in a subsequent action involving the same subject matter or transaction, although based upon a different cause of action from that upon which the original action was based.

"This applies, for example, where successive actions are brought for breaches of the same contract. Thus, if in an action for breach of contract an issue is raised and determined as to the legal sufficiency or the construction of the contract, the judgment is conclusive between the parties in a subsequent action brought to recover for another breach of the same contract in which the same issue arises.

"The rule here stated is applicable where successive actions are brought

to recover installments of interest upon an obligation, or rentals under a lease, or income or property taxes for succeeding years.

"Similar questions arise where successive actions are brought to recover installments of a pension from the government. . . ."

*The Issue Whether the Guaranty Was Supported by Consideration Was Conclusively Determined by the Former Adjudication.*

We deem it unnecessary to further extend this opinion with a detailed discussion of defendant's argument that the trial court erred in applying the doctrine of res judicata against his defense that as to the two promissory notes which antedated his signing of the guaranty, his undertaking was without consideration and therefore unenforceable. A reading of the former decision of this court in *Beverly Hills Nat. Bank* v. *Glynn, supra,* in the light of the authorities we have discussed above, is sufficient to demonstrate the conclusive effect of the former adjudication.

### The Law of the Case

█ Although plaintiff has not indicated its reliance upon the doctrine of the law of the case, it appears to us that its application would dictate the same results as those which flow from our application of the doctrine of res judicata. █ As recently stated in *Davies* v. *Krasna,* 12 Cal. App.3d 1049, 1053 [91 Cal.Rptr. 250], "It is the general rule that all the issues and questions adjudicated on a prior appeal are the law of the case on all subsequent appeals and will not be reconsidered. (*Allen* v. *California Mutual B. & L. Assn.* (1943) 22 Cal.2d 474 [104 P.2d 851].) █ 'Where questions presented on a subsequent appeal were necessarily involved in a former appeal, and the conclusion arrived at on the former appeal could not have been reached without expressly or impliedly deciding the question subsequently presented, the decision on the former appeal is the law of the case and rules throughout all subsequent stages of the action.' (*Stock* v. *Meek* (1952) 114 Cal.App.2d 584, 586 [250 P.2d 622].)"

█ As we have seen, the opinion deciding the former appeal in this case held that defendant had not been induced to execute the guaranty by any form of fraudulent representation or concealment of facts relating to O'Toole's financial condition and that the determinative findings of fact of the trial court were supported by the evidence. Since the evidence offered by defendant at the second trial on the issues of fact tendered by his pleaded defenses was substantially the same as that which he had offered at the first trial, the law of the case would appear to be controlling. (3 Witkin, Cal. Procedure, Appeal, § 213, p. 2424.)

*Respondent Is Entitled to an Award of Attorney's Fees
Incurred in This Appeal.*

 At the hearing in the court below, the trial court awarded plaintiff attorney's fees in the sum of $3,250 for legal services theretofore rendered in connection with the enforcement of the third and fourth causes of action. The guaranty instrument involved in this case contains a provision for the recovery of attorney's fees incurred in enforcing the provisions of the agreement. It is well settled that such a provision embraces an allowance for legal services rendered on appeal and that the appellate court has the power to determine the amount to be awarded for such legal services without remanding the case to the trial court for such determination. (*Wilson* v. *Wilson* (1960) 54 Cal.2d 264, 272 [5 Cal.Rptr. 317, 352 P.2d 725]; *Schwerin* v. *Shostak* (1963) 213 Cal.App.2d 37, 44 [28 Cal.Rptr. 332].) In the light of the record herein and the declaration of counsel for the respondent setting forth the relevant facts relating to the nature of the services rendered and the amount of time expended, we conclude that the reasonable amount to be allowed as attorney's fees for the services rendered by counsel for respondent in connection with this appeal is the sum of $500.

The judgment is affirmed, and appellant is ordered to pay to respondent additional attorney's fees on this appeal in the sum of $500.

Fleming, J., and Compton, J., concurred.

A petition for a rehearing was denied April 22, 1971.