**STATE of North Dakota, Plaintiff and Appellant,**

v.

**J.P. LAMB LAND COMPANY, a North Dakota corporation, Defendant and Appellee.**

**Civ. No. 11284.**

Supreme Court of North Dakota.

March 2, 1987.

---

Robert O. Wefald, Sp. Asst. Atty. Gen., Bismarck, for plaintiff and appellant.

John D. Kelly, of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for defendant and appellee.

VANDE WALLE, Justice.

The State of North Dakota appealed from a summary judgment dismissing its complaint against the J.P. Lamb Land Company [Lamb]. We are asked to determine whether or not the 1981 amendments to the North Dakota Corporate Farming Law apply so as to prohibit Lamb from continuing to operate a corporate farm which, under the principle of res judicata, was considered to be in compliance with that law prior to the 1981 amendments. We conclude that the 1981 amendments do prohibit the operation of the corporate farm by Lamb and we therefore reverse and remand.

Lamb is a North Dakota corporation with a principal purpose of leasing more than 5,000 acres of farmland it owns in Nelson and Walsh counties. Lamb was originally incorporated on February 1, 1904, for a term of twenty years. The term of Lamb's incorporation was renewed in 1924 and again in 1944 for twenty years, and in 1964 it was granted perpetual existence. Lamb acquired ownership of all the farmland relevant to this dispute before July 29, 1932.

On July 29, 1932, North Dakota voters approved an initiated measure prohibiting corporations from engaging in farming or agriculture and requiring all corporations then owning or thereafter acquiring real estate, "except such as is reasonably necessary in the conduct of their business," to dispose of that real estate within ten years. 1933 N.D.Sess.Laws, p. 494, I.M. June 29, 1932; see also, 1933 N.D.Sess.Laws, Ch. 89. That initiated measure is currently found in Chapter 10–06, N.D.C.C. [Corporate Farming Law].

In 1965 the State brought an action against Lamb alleging that it was in violation of Chapter 10–06, N.D.C.C. The district court concluded that the "except such as is reasonably necessary in the conduct of its business" exception applied to Lamb in its business of leasing farmland and dismissed the State's complaint. No appeal was taken in that action.

In 1981 the Legislature amended Chapter 10–06, N.D.C.C.1981 N.D.Sess.Laws, Ch. 134. Insofar as they are relevant to this case, the 1981 amendments repealed the exception relied upon by the district court in its 1965 decision and essentially permitted only closely held family-farm corporations to own or lease land used for farming or ranching or to engage in the business of farming or ranching. Section 10–06–07, N.D.C.C.[1]

---

**1.** Section 10–06–07, N.D.C.C., which sets forth the criteria for corporations allowed to engage in farming or ranching, provides:

"This chapter does not prohibit a domestic corporation from owning real estate and engaging in the business of farming or ranching, if the corporation meets all the requirements of chapters 10–19.1, 10–22, and 10–23 not inconsistent with this chapter. The following requirements also apply:

"1. The corporation must not have more than fifteen shareholders.

"2. Each shareholder must be related to each of the other shareholders within one of the following degrees of kinship or affinity: par-

ent, son, daughter, stepson, stepdaughter, grandparent, grandson, granddaughter, brother, sister, uncle, aunt, nephew, niece, great-grandparent, great-grandchild, first cousin, or the spouse of a person so related.

"3. Each shareholder must be an individual or one of the following:

"a. A trust for the benefit of an individual or a class of individuals who are related to every shareholder of the corporation within the degrees of kinship or affinity specified in this section.

"b. An estate of a decedent who was related to every shareholder of the corporation

Lamb does not qualify to own farmland under the 1981 amendments, and in 1983 the State brought a declaratory-judgment action against Lamb seeking enforcement of the 1981 amendments. The Burleigh County district court entered summary judgment dismissing the State's action, and we affirmed the dismissal for lack of jurisdiction but without prejudice because Section 10–06–13, N.D.C.C.,[2] required the action to be brought in Nelson County, not Burleigh County. *State of North Dakota v. J.P. Lamb Land Co.*, 359 N.W.2d 368 (N.D.1984).

Thereafter the State commenced this action in Nelson County, and Lamb moved to dismiss, asserting that (1) the 1981 amendments to Chapter 10–06, N.D.C.C., were not applicable to it, (2) the application of those amendments to it violated the North Dakota and United States Constitutions, and (3) the doctrine of res judicata barred the State's action. The district court concluded that the 1965 district court decision was res judicata as to this action and that 1981 amendments were not applicable to Lamb because the Legislature had not expressly declared that they applied retroactively to corporations lawfully owning farmland before 1981. The district court granted Lamb's motion for summary judgment, and the State has appealed.

The State contends that the 1981 amendments to Chapter 10–06, N.D.C.C., apply to Lamb's ownership of farmland. The State argues that a corporation is a creature of statute and not a natural person, and the Legislature may alter, suspend, or repeal any statutorily granted corporate power. Lamb counters that the Legislature did not intend retroactive application of the 1981 amendments to its ownership of farmland. Lamb asserts that the Legislature's silence on the application of the 1981 amendments to corporations complying with the Corporate Farming Law before 1981 compels the conclusion that the amendments are not to be applied retroactively, citing Section 1–02–10, N.D.C.C.[3]

Our analysis of this issue begins with Art. XII, § 2, N.D. Const., which, as relevant to this appeal, has been the same since first adopted as Art. VII, § 131, in the Const. of 1889. It provides, in part:

within the degrees of kinship or affinity specified in this section.

"4. Neither a trust nor an estate may be a shareholder if the beneficiaries of the trust or the estate together with the other shareholders are more than fifteen in number.

"5. Each individual who is a shareholder must be a citizen of the United States or a permanent resident alien of the United States.

"6. The officers and directors of the corporation must be shareholders who are actively engaged in operating the farm or ranch and at least one of its shareholders must be an individual residing on or operating the farm or ranch.

"7. An annual average of at least sixty-five percent of the corporation's gross income over the previous five years, or for each year of its existence, if less than five years, shall have been derived from farming or ranching operations.

"8. The corporation's income from nonfarm rent, nonfarm royalties, dividends, interest, and annuities cannot exceed twenty percent of the corporation's gross income."

2. Section 10–06–13, N.D.C.C., provides, in pertinent part:

"1. The attorney general shall commence an action in the district court of the county in which the substantial portion of farmland or ranchland used in violation of this chapter is situated, if the attorney general has reason to believe that any person is violating this chapter. The attorney general shall file for record with the register of deeds of each county in which any portion of the land is located a notice of the pendency of the action. If the court finds that the land in question is being held in violation of this chapter, or that a corporation is conducting the business of farming or ranching in violation of this chapter, the court shall enter an order so declaring. The attorney general shall file any such order for record with the register of deeds of each county in which any portion of the land is located. Thereafter, the corporation shall, within the time set by the court not to exceed one year from the date of the court's final order, divest itself of any farming or ranching land owned or leased by it in violation of this chapter, and cease all farming and ranching operations. Any corporation that fails to comply with the court's order shall be dissolved by the secretary of state."

3. Section 1–02–10, N.D.C.C., provides:

"*Code not retroactive unless so declared.* —No part of this code is retroactive unless it is expressly declared to be so."

"No charter of incorporation shall be granted, changed or amended by special law, ... but the legislative assembly shall provide by general laws for the organization of all corporations hereafter to be created, and any such law, so passed, shall be subject to future repeal or alteration."

██ A corporation is a creature of statute which cannot exist without the consent of the sovereign, and the power to create a corporation is an attribute of sovereignity. *Airvator, Inc. v. Turtle Mountain Manufacturing Co.*, 329 N.W.2d 596 (N.D.1983). Because a corporation is a creature of statute, it is subject to conditions that the State may impose. *Asbury Hospital v. Cass County*, 72 N.D. 359, 7 N.W.2d 438 (1943), *aff'd after remand*, 73 N.D. 469, 16 N.W.2d 523 (1944), *aff'd*, 326 U.S. 207, 66 S.Ct. 61, 90 L.Ed. 6 (1945).

In *Asbury Hospital v. Cass County, supra*, 7 N.W.2d at 451, this court said:

"Where there is a reservation in the state constitution of power to alter, suspend or repeal all laws, providing for organization of corporations—such as there is in the constitution of this state—this reservation becomes a part of the charter of the corporation ... and it is beyond the power of the legislature to confer upon corporations powers that are not subject to abrogation or change pursuant to the legislative power so reserved." [Citations omitted.]

Section 10–23–17, N.D.C.C., originally enacted in 1957, and applicable to the Corporate Farming Law by virtue of Section 10–06–07.1, N.D.C.C., provides, in relevant part:

"Every grant of corporate power is subject to alteration, suspension, or repeal in the discretion of the legislative assembly, and any statute of this state relating to corporations may be repealed or amended, and all corporations organized under this title may be dissolved by the legislative assembly at any time."

██ In this case, the State is seeking to apply the 1981 amendments to Lamb's ownership of farmland after 1981 and not to its ownership of farmland before 1981. See *Thompson v. Thompson*, 78 N.W.2d 395 (N.D.1956). We are not persuaded by Lamb's argument that the State is seeking retroactive application of the 1981 amendments. A statute receives retroactive application when it operates on transactions which have occurred, or on rights or obligations which have existed, before its enactment. *Perry v. O'Farrell*, 120 Colo. 561, 212 P.2d 848 (1949); *Walker State Bank v. Chipokas*, 228 N.W.2d 49 (Iowa 1975); *City of Harlem v. State Highway Commission*, 149 Mont. 281, 425 P.2d 718 (1967); *Village of Menomonee Falls v. Michelson*, 104 Wis.2d 137, 311 N.W.2d 658 (1981). In this case Lamb's ownership of farmland continued after the 1981 amendments. Although Lamb may not have been in violation of the law when it acquired its land or before the 1981 amendments, the Legislature had the authority to repeal or alter that law by virtue of Art. XII, § 2, N.D. Const., and Section 10–23–17, N.D. C.C. *Asbury Hospital v. Cass County, supra*. The 1981 amendments repealed the exception relied upon by the district court in its 1965 decision, leaving in effect statutory language which forbids the ownership of land by a corporation except under circumstances not here pertinent. That language provides no authorization for a corporation such as Lamb to own farmland. Rather, the unambiguous language of the 1981 amendments can only be construed to mean that the Legislature intended that a corporation's continuing ownership of farmland is subject to those amendments.[4] We conclude that Lamb's ownership of

4. Our analysis is also in accord with the available legislative history. The 1981 amendments to Chapter 10–06, N.D.C.C., relevant to this action were initially proposed in Senate Bill 2280 in 1979 but were vetoed by the Governor. 1979 N.D.Sess.Laws, Ch. 679. The January 26, 1979, Minutes of the House Agriculture Committee regarding Senate Bill 2280 express the opinion of Alan Hoberg, staff attorney for the Legislative Council, that the legislation would not "grandfather in any type of corporation."

farmland is subject to the 1981 amendments to Chapter 10–06, N.D.C.C.

The State contends that the 1981 amendments to Chapter 10–06, N.D.C.C., changed the relevant law and precluded Lamb from relying on the 1965 district court action as a bar to this action. Lamb responds that the underlying facts in this action (i.e., ownership of farmland) are identical to the underlying facts in the 1965 action and therefore that decision is res judicata as to this action.

In *Oakes Municipal Airport Authority v. Wiese,* 265 N.W.2d 697, 700 (N.D.1978), we described the doctrine of res judicata:

"The doctrine of *res judicata* is that a valid, existing final judgment is conclusive, with regard to the issues raised and determined therein, as to the parties and their privies in all other actions.... The purpose of the doctrine is to require a definite termination of litigation and to prevent the multiplicity, waste, and harassment which would result if a party could compel an adversary to re-litigate matters previously raised at issue and determined." [Citations omitted.]

It is also a well-established principle that res judicata is not a defense if, between the first judgment and the second action, there has been an intervening change in the law or modification of significant facts creating new legal conditions. *State Farm Mutual Automobile Ins. Co. v. Duel,* 324 U.S. 154, 65 S.Ct. 573, 89 L.Ed. 812 (1945); *Jackson v. DeSoto Parish School Bd.,* 585 F.2d 726 (5th Cir.1978); *Texaco, Inc. v. United States,* 579 F.2d 614, 217 Ct.Cl. 416 (1978).

Although the factual situation (i.e., ownership of farmland) may not have changed since the 1965 district court decision, the 1981 legislation repealed the statutory exception relied upon in that decision. That intervening statutory change established different criteria for corporations to qualify for the ownership of farmland. Because of the 1981 amendments and Lamb's continued ownership of farmland, the issues in this case are different from those decided in 1965 and do not involve a relitigation of the 1965 decision.

We are not persuaded by Lamb's reliance on *Beverly Hills National Bank v. Glynn,* 93 Cal.Rptr. 907, 16 Cal.App.3d 274 (1971). In that case a judgment was entered after the resolution of certain issues of fact and questions of law, and the defendant was collaterally estopped from raising those issues of fact and questions of law in a second action. However, that case did not involve an intervening change in the law as does the instant case.

■ We conclude that the intervening statutory amendments to Chapter 10–06, N.D.C.C., preclude Lamb from successfully asserting the res judicata defense in this action.

Lamb contends that the 1981 amendments deprive it of property without due process of law in violation of the North Dakota and United States Constitutions. Lamb argues that the 1981 amendments confiscate its property without giving it a reasonable period of time to divest itself of the land. The State responds that due process is met by the divestment period of Section 10–06–13, N.D.C.C., which provides in relevant part:[5]

"Thereafter, the corporation shall, within the time set by the court not to exceed one year from the date of the court's final order, divest itself of any farming or ranching land owned or leased by it in violation of this chapter, and cease all farming and ranching operations."

■ A private corporation comes within the protection provided by the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution. *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978); see *County of Stuts-*

---

5. As originally proposed, the divestment period was no more than three years from the date of the court's order. However, that time period was subsequently amended to correspond to the twelve-month period in 26 U.S.C. § 337 for gains or losses on sales in connection with certain corporate liquidations. See March 17, 1981, Minutes of Agriculture Committee of House regarding Senate Bill 2233.

*man v. State Historical Society of North Dakota,* 371 N.W.2d 321 (N.D.1985).

In *Asbury Hospital v. Cass County, supra,* 7 N.W.2d at 453, we held that the former ten-year period for divestiture of farmland in the Corporate Farming Law did not violate due process:

"The question next presents itself whether such provisions operate to deprive the plaintiff corporation of its property without due process of law. This question must be answered in the negative. The State having the right to restrict the power of the plaintiff and corporations similarly situated as to the acquisition and ownership of real estate within the State, it naturally follows that any legislation which it might enact to carry such policy into effect must have a beginning, and 'the 14th Amendment does not forbid statutes and statutory changes to have a beginning.' ... Of course, the State could not put its new policy into effect in such sudden and arbitrary manner as to practically sacrifice and confiscate the interest of the corporation in the property that it had been permitted to acquire within the State. In making the change it must give the corporation reasonable time in which to dispose of its property.... The statute gives to corporations like the plaintiff, who held rural real estate at the time the statute became effective, ten years in which to dispose of it before such property becomes subject to the provisions of the statute providing for disposal of the property under the procedure provided by the statute. Clearly the period of time provided by the statute cannot be said to be so unreasonable or arbitrary as to operate to deprive corporations holding land subject to the statute of property without due process of law." [Citations omitted.]

On appeal, the United States Supreme Court, rejecting Asbury Hospital's due-process argument, said:

"The due process clause does not guarantee that a foreign corporation when lawfully excluded as such from ownership of land in the state shall recapture its cost. It is enough that the corporation, in complying with the lawful command of the state to part with ownership, is afforded a fair opportunity to realize the value of the land, and that the sale, when required, is to be under conditions reasonably calculated to realize its value at the time of sale. No reason is advanced for saying, and we cannot say that the period of ten years allowed to appellant to dispose of the property, or its sale after ten years at public auction held under direction of the court and comparable generally to a mortgage foreclosure sale, fails to satisfy either of these conditions." *Asbury Hospital v. Cass County,* 326 U.S. 207, 212–213, 66 S.Ct. 61, 64, 90 L.Ed. 6 (1945).

The State argues that Lamb has been aware of its violation of the Corporate Farming Law since 1932 and that a one-year divestment period would work no hardship on it.

■■■ We are not persuaded by the State's argument because, before 1981, Lamb was arguably in compliance with the Corporate Farming Law.[6] Before 1981 the period of divestment was ten years which the United States Supreme Court has determined provided a corporation with a fair opportunity to realize the value of its land at the time of sale. *Asbury Hospital, supra.* In this case we must recognize that the large

6. We express no opinion on the effect of *Coal Harbor Stock Farm, Inc. v. Meier,* 191 N.W.2d 583 (N.D.1971), on the 1965 district court decision. In *Coal Harbor* we held that incorporators of a corporation were not entitled to approval of their proposed articles of incorporation and certificate of incorporation. In that case, the incorporators sought incorporation for the purpose of engaging in the business of farming with the power to acquire real estate for farming. We concluded that, in view of the prohibition in Section 10–06–01, N.D.C.C., enjoining the business of farming or agriculture by corporations, the proposed corporation would have been formed for an unlawful purpose and that rural real estate owned by a corporation organized for the purpose of engaging in farming did not qualify for the "except such as is reasonably necessary in the conduct of its business" exception.

amount of land owned by Lamb is in a small area and that there are difficulties attendant with providing a fair opportunity to realize the value of that amount of land in such an area. We are also cognizant of the instability of farmland values. We believe these circumstances establish that divestiture in less than one year from the date of a court's final order does not provide a fair opportunity for Lamb to realize the value of its land. Because of the unique circumstances of this case in which Lamb was arguably in compliance with the Corporate Farming Law when the period of divestiture was ten years and in view of the United States Supreme Court's decision in *Asbury Hospital, supra,* approving ten years as a reasonable time for divestiture, we believe that a more appropriate period of divestiture for Lamb is ten years from the effective date of the 1981 amendments to Chapter 10–06, N.D.C.C. Accordingly, we remand to the district court to enter an order requiring Lamb to either comply with the provisions of Chapter 10–06, N.D.C.C., or divest itself of its farmland by July 1, 1991.

The district court judgment is reversed and the case is remanded for proceedings consistent with this opinion.

ERICKSTAD, C.J., MESCHKE and GIERKE, JJ., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting in place of LEVINE, J., disqualified.